THE DELAWARE, LACKAWANNA AND WESTERN RAILROAD COMPANY, Appellant, *v.* THE CITY OF BUFFALO and HENRY QUINN, Respondents.

1. RAILROADS — NECESSITY OF STATUTORY AUTHORITY FOR OCCUPATION OF STREET. Whether the right of a railroad to occupy a public street proceeds directly from the legislature or indirectly through the medium of local authorities, cannot affect the principle that in all such cases the party who obstructs or interferes with a public or private right must justify the invasion by pointing to a statute which specifically authorizes the particular thing complained of.

2. CONSENT OF MUNICIPAL AUTHORITIES TO RAILROAD STREET CROSSING, UNDER CHARTER — OBSTRUCTIVE ELEVATED STRUCTURE. The permission granted to the authorities of the city of Buffalo by its charter, to give the requisite consent for railroads to cross the public streets, does not necessarily justify the maintenance of an elevated structure across a public street, when constructed in such a manner that a considerable portion of the highway is occupied by the abutments and other supports of the bridge, thereby obstructing the roadway below to such an extent as to impair its use by the traveling public.

3. AUTHORIZATION OF CROSSING, UNDER MUNICIPAL CHARTER AND GENERAL RAILROAD ACT. The provision of the charter of the city of Buffalo permitting the common council by a two-thirds vote to consent

to the construction of a railroad across a street is not independent of the provisions of the General Railroad Act authorizing the construction of railroads, but the two statutes may be read together, and when so read they simply authorize a railroad to cross a street, but not necessarily in such a way as to obstruct its use or exclude the public right.

4. Absence of Municipal Consent.   Independently of the limitations upon the power of municipal authorities to permit obstructions to be placed in streets by railroads, a railroad cannot maintain a structure, elevated or otherwise, across a street, as against the municipality, in the absence of clear proof of consent on the part of the municipal authorities to the construction of the identical structure in question.

(Submitted March 20, 1899; decided April 18, 1899.)

Motion for reargument of case reported at page 266 of this volume.

*John G. Milburn* for appellant, for motion.

*W. H. Cuddeback* and *C. V. Nellany* for respondents, opposed.

O'Brien, J.   The learned counsel for the plaintiff, in a motion for a reargument of this case, insists that in our decision of the appeal we have overlooked the independent power and authority vested in the governing body of the city of Buffalo by the charter, to permit railroads to cross the public streets.   (Laws of 1870, ch. 519, title 3, § 19.)   He contends that the power thus conferred upon the city authorities is entirely independent of and free from the limitations imposed by the General Railroad Act.   (Laws of 1850, ch. 140, § 28, subd. 5.)

We were and still are of opinion that the plaintiff must rest its right to obstruct the street in this case upon legislative authority, and we attempted to point out in the decision rendered upon the appeal the principle by which this right is governed.   We held and are still disposed to hold that the legislative authority upon which the plaintiff must rely does not necessarily justify the maintenance of the elevated structure in question across a public street, when constructed in

such a manner that a considerable portion of the highway is occupied by the abutments and other structures which support the bridge. The railroad certainly could have exercised the right to cross without obstructing the roadway below to such an extent as to impair its use by the traveling public. Our reasons for this conclusion were briefly stated in the opinion given upon the decision of the case.

The distinction which the learned counsel attempts to make, between a grant to occupy the street under the Railroad Law and a grant from the municipal authorities under the provisions of the charter, has, we think, no substantial basis. Whether the railroad attempts to justify the maintenance of this structure under the provisions of the charter or under the provisions of the Railroad Law, is quite immaterial; the principle that controls the case is the same in either event. There is no independent authority in the municipality to permit railroads to occupy the streets. That right proceeds from the legislature in all cases. The right conferred by the Railroad Law is a direct grant from the legislature upon compliance with certain conditions. So is the right conferred by the charter, and the only difference in the two cases is that the legislature, in the latter case, has delegated a part of its own powers to the local authorities. But whether the right to occupy the streets proceeds directly from the legislature, or indirectly through the medium of local authorities, cannot affect the principle that in all such cases the party who obstructs or interferes with a public or private right must justify the invasion by pointing to a statute which specifically authorizes the particular thing complained of. The right to cross is given by statute, but whether the company has exercised this right in the proper way, and with due regard to the public convenience, is always a question open to judicial inquiry. This would be so, even if the learned counsel is right in assuming that the permission of the local authorities is independent of the Railroad Law, but we are by no means prepared to say that he is right in his contention.

The *right* of a railroad to occupy a public street or high-

· way has its origin and foundation in the statute authorizing and regulating the construction of railroads. That right is conditioned upon the consent of the local authorities. All that the charter does in this case is to supplement the Railroad Law, since it permits the common council to give the assent required by that law by a two-thirds vote. The Railroad Law confers the right to occupy the highway upon a consent being given, and the charter prescribes how or by what vote the permission of the local authorities should be expressed. But in either case the railroad, when its right is questioned or assailed, must fall back upon legislative authority, and in order to maintain or defend a structure of this character in a public highway the authority must be so clear and specific as to justify the very thing which it is claimed was an invasion of the public right. The Railroad Law and the charter may be read together, and when so read they simply authorize a railroad to cross the street, but not necessarily in such a way as to obstruct its use or exclude the public right.

The Railroad Law and the charter undoubtedly authorize the municipal authorities, by resolution or otherwise, to enter into an agreement with a railroad upon a plan for, crossing a street at an elevation or otherwise, and when the railroad acts upon the agreement thus made and constructs the crossing accordingly, it can then insist upon maintaining its structure under legislative authority, but the difficulty in this case is that, in view of the numerous contradictory and conflicting acts and resolutions of the city authorities, it cannot be said that such an agreement was ever made. If the plaintiff had made out a clear case of consent on the part of the city authorities to the construction of the bridge in question in the manner that it has been constructed, the plaintiffs' case would stand in a different light. But it is very difficult to read the case without being impressed with the fact that the attitude of the city authorities with respect to the identical structure in question was that of opposition rather than approval. The law contemplates that a reasonable arrangement may be made between the municipal authorities and the railroad whereby

61

every substantial public interest may be subserved, and, when that is fairly made, the right of the railroad secured thereby stands on the same footing as any other right acquired by law. There must, of course, be some limit upon the power of the governing body to permit obstructions to be placed in streets by railroads, but there is nothing in this case that calls for a discussion of these limitations.

We are not convinced, therefore, that any substantial reason has been shown for a reargument of the case, and the motion should be denied, with ten dollars costs.

All concur; BARTLETT, J., votes for denial generally.

Motion denied.